UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br><br>VICTOR MANUEL CALIXTRO-LOYA ,<br>ANADELIA PACHECO-RIVERA<br>　　　　Defendants. | Court File No. 22-cr-252 (02)(NEB/LIB)<br><br><br><br>MEMO IN SUPPORT OF MOTION<br>TO SUPPRESS<br>EVIDENCE FROM ILLEGAL<br>SEARCH AND SEIZURE |

## INTRODUCTION

　　Anadelia Pacechco-Rivera and Victor Manuel Calixtro-Loya ("defendants") have moved the Court for an Order suppressing all evidence obtained as a result of the illegal search and seizure on July 19, 2022. A hearing on this matter occurred on February 16, 2023 with Trooper Rauenhorst testifying for the Government. Trooper Rauenhorst's body camera video was offered and admitted as Exhibit 1. The Court directed the Defendants to file a joint brief addressing the two suppression motions.

The Defendants' argument focuses on the following:

1. The stop of Defendants's vehicle was extended impermissibly once Trooper Rauenhorst completed the written warning. *Rodriguez v. United States*, 575 U.S. 348, 135 S.Ct. 1609(2015).

2. The extension of the stop for the purpose of a dog sniff was impermissible and not based upon reasonable suspicion. *Rodriguez v. United Sates*, 575 U.S. 348, 135 S.Ct. 1609 (2015).

## CASE LAW

**1.　Fourth Amendment Basics**

1

Under the Fourth Amendment, the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Constitution, Amend. IV. "The touchstone of analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108-109, 98 S. Ct. 330, 54 L.Ed.2d 331 (1977). (quoting *Terry v. Ohio*, 392 U.S., 19 88 S.Ct. 1868, 20 L.Ed2d 889 (1968)).

As summarized by the 8th Circuit in *United States v. Poitier*:

> Supreme Court juris prudence has placed police-citizen encounters into three tiers or categories: First, there are communications between officers and citizens that are consensual and involve no coercion or restraint of liberty. Such encounters are outside the scope of the Fourth Amendment. Second, there are the so-called *Terry*-type stops. These are brief, minimally intrusive seizures but which are considered significant enough to invoke Fourth Amendment safeguards and thus must be supported by a reasonable suspicion of criminal activity. Third, there are highly intrusive, full-scale arrests, which must be based on probable cause.

*Poitier*, 818 F.2d 679, 682 (8th Cir. 1987)

The Fourth Amendment says nothing about suppression of evidence obtained in violation of the rule, however, this exclusionary rule has become vital to the enforcement of the Constitutional rights. The exclusionary rule was created to "compel respect for the constitutional guaranty." *Davis United States*, 564 U.S. 229, 236-37, 131 S.Ct. 2419, 180 L.Ed2d 285 (2011).

### 2. The Fourth Amendment Applies to Traffic Stops

> Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions. *United States v. Madrid*, 152 F.3d 1034, 1037 (8th Cir. 1998) (citing *Horton v. California*, 496 U.S. 128, 133 n.4, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990)). One such exception is the so-called 'automobile exception,' which authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity. *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003). The government bears the burden of establishing that an exception to the warrant requirement applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971).

> *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004).

The Supreme Court has held roadside traffic stops are seizures for the purposes of the Fourth Amendment analysis. "For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest. As such, a traffic stop is governed by

the principals of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.ED.2d 889 (1968)." *United States v. Jones*, 269 F3d. 919, 924 (8th Cir. 2001). A lawful traffic stop must be based on "at least a reasonable, articulable suspicion that criminal activity is afoot." *Id*. the United States bears the burden to establish a traffic stop complied with Fourth Amendment analysis. *United States v. Adler*, 590 F3d 581, 583 (8th Cir 2009). In connection with the traffic stop, an officer's investigation must be limited in scope to the specific circumstances precipitating the stop. *Rodriguez v. Unites States*, 575 U.S 348, 35,3 135 S. Ct. 1609, 1614 (2015); *Illinois v. Cabelles*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L.Ed2d 842 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonable required to complete that mission."); *Terry*, 392 U.S at 19.

Both Defendants (hereinafter Ana and Victor) have standing to challenge the search in this case because they not only had a reasonable expectation of privacy in the vehicle, they also were unlawfully detained. Only those with a reasonable expectation of privacy in the place searched may bring a Fourth Amendment challenge. *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469 (1998). Both Ana and Victor have a privacy expectation in the vehicle because they explained the vehicle belonged to Ana's son and they were allowed to use the vehicle. They also complain the stop was unlawfully extended. A passenger may suppress evidence found in a vehicle when an unreasonably extended traffic stop causes the search. *U.S. v. Peralez*, 526 F.3d 1115, 1121 (8th Cir. 2008); *citing Brendlin v. California*, 551 U.S. 249, 251, 263, 127 S.Ct. 2400 (2007).

3. **Rodriguez v. United States**

The Supreme Court's 2015 *Rodriguez* decision further defined the contours of a lawful traffic stop. A canine officer stopped Rodriguez at 12:06 a.m. after observing his vehicle "veer slowly onto the shoulder…for one or two seconds and then jerk back onto the road," a violation of Nebraska law. *Rodriguez*, 135 S. Ct. at 1612. The officer gathered Rodriguez's license, registration, and proof of insurance, then ran a records check. After the records check, the officer asked a passenger in Rodriguez's vehicle for identification, questioned the passenger about travel plans, and ran a records check on the passenger. The canine officer called for a second officer, then began writing a traffic warning. By 12:28 a.m. at the latest, the canine officer had issued the warning ticket and returned documents to Rodriguez and his passenger. The canine officer testified, "I got all the reason for the stop of the the way…took care of all the business" by that point. Id. at 1613.

3

Upon completion of the warning and return of documents, the officer asked permission to conduct a canine sniff, to which Rodriguez refused. The canine officer had Rodriguez exit the vehicle and called for a second officer. Officer #2 arrived at 12:33 a.m. The canine officer then walked his dog around the vehicle twice, and the dog alerted during the second pass. The subsequent search led to the discovery of a large bag of methamphetamine. At most, eight minutes passed between completion of the traffic warning issuance and discovery of narcotics. *Id*.

Rodriguez was charged with drug distribution and moved to suppress evidence as fruit of a impermissible extension of the traffic stop absent reasonable suspicion. The magistrate judge recommended a finding of 1) no reasonable suspicion supported Rodriguez's detention after the warning was issued, and 2) no probable cause supported the vehicle search absent the canine alert. However, because the Eight Circuit law permitted extension of a traffic estop where there was "only a de minimis intrusion" on Fourth Amendment rights, the magistrate judge recommended denying the motion to suppress. The District Judge adopted those recommendations and the Eighth Circuit affirmed. *Id*.

The Eighth Circuit declined suppression, applying the good-faith exception to the exclusionary rule because the officers conducted the traffic stop in objectively reasonable reliance on the de minimis rule, which was binding precedent at the time of the search. *United States v. Rodriguez*, 799 F.3d 1222, 1223 98th Cir. 2015). "Searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Davis*, 564 U.S. at 232, 131 S. Ct. 2419.

The Supreme Court reversed, holding the office did not have "reasonable suspicion ordinarily demanded to justify detaining an individual" in order to extend the stop after the time required to effect the original purpose of the stop, i.e., issuance of a traffic warning. *Id*. at 1615. Rodriguez resolved the division among circuit courts on whether police routinely may extend an otherwise completed traffic stop, absent reasonable suspicion of other criminal activity, in order to conduct a dog sniff. Rodriguez, 135 S. Ct. at 1614. The Supreme Court rejected the de minimis rule for which the Eighth Circuit had relied, specifically stating:

> A seizure justified only by a police-observed traffic violation, therefore, "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission" of issuing a ticket for the violation. *Id*. at 1612.

The court explained the "mission" of issue a ticket for a traffic violation:

Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to the stop." Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. *Rodriguez*, 135 S.Ct. at 1615. A canine sniff is aimed to "detect evidence of ordinary criminal wrongdoing rather than a traffic code enforcement." Id.

The Supreme Court stated an officer may conduct certain unrelated checks during an otherwise lawful traffic stop but "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual. *Id*. Under *Rodriguez*, a traffic stop may last no longer than is necessary to effectuate its purpose. "Authority for a seizure thus end when tasks tied to the traffic infraction are – or reasonably should have been – completed." *Id*. at 1614.

**FACTS**

On July 19, 2022, State Trooper Rauenhorst, stopped a vehicle traveling eastbound on I-94 in Stearns County at approximately 9:48 a.m. The vehicle was passing another trooper stopped on the eastbound lane. Trooper Rauenhorst testified that the driver was looking at the stopped trooper and did not see him on the other side of the highway - which he found suspicious. He clocked the vehicle traveling 76 in a 70 mph zone and crossed the highway to catch up. Trooper Rauenhorst caught up to the vehicle and activated his lights as the vehicle slowed, used the right turn signal and pulled over. He testified the driver did not turn off the right turn signal. The Toyota Corolla was being driven by Defendant Anadelia Pacheco-Rivera (hereafter "Ana"), the passenger was Defendant Victor Manuel Calixtro-Loya (hereafter "Victor") and the couple was traveling with their dogs. (Tr. P 14, L 12-18)

Trooper Rauenhorst requested license and insurance from the driver. Both were valid. He inquired about who owned the vehicle and the driver stated it was owned by her son, Miguel. (Tr. P 19) He asked where the couple was traveling to; he was told Minneapolis, Bloomington and the Mall of America. The couple stated they would be there for 3 days. (Exhibit 1) When asked, Ana stated she lived in Oregon. (Exhibit 1) Trooper Rauenhorst confirmed the license and insurance was valid, but discovered the vehicle was registered to a Carlos Eduardo Tejeda-

5

Ramirez.  He never asked Ana why the car was registered to a Carlos instead of a Miguel. (Exhibit 1)

Trooper Rauenhorst testified that he saw no luggage in the back seat, rather, he only saw the items for the dog. (Tr. P 23, L 17-23)  However, he did not ask the couple about the luggage. The luggage was in the trunk. (Exhibit 1)  Trooper Rauenhorst testified that he observed a dog in the car, later he saw a small second dog,  which he found suspicious because dogs can't go to the Mall of America.  (Tr. P 22)

Trooper Rauenhorst testified he noticed the keys in the ignition was just one key without house keys attached. (Transcript P 25 L1-5).  He did not ask the driver why her house keys were not on the key chain.  He noticed Victor had two cell phones near him and one was mounted on the dash with GPS directions on the screen.  (Transcript P 25 L 13-16)

**Conclusion of Stop**

Trooper Rauenhorst wrote up a warning for a speed violation and issued it to Ana at 10:04 a.m. (Exhibit 1) He admitted that, at this point, he had concluded the stop. (Transcript P 46 L 24, P 45 L 2) However, at 10:05 a.m. Trooper Rauenhorst inquired as to whether there was anything illegal in the car to which Ana responded "no". (Exhibit 1)  He told the couple he would be running the dog around the vehicle. (Exhibit 1)   Trooper Rauenhorst testified that he asked to run the dog around the vehicle and was told either "ok" or "yes" by the driver, but admitted his report states the told them he would be running his canine around the vehicle.  (Tr. P 49 L 21-25).

**Dog Sniff**

Trooper Rauenhorst removed his dog, Frizco,  from the squad at 10:06 and completed the dog sniff at 10:07.  (Exhibit 1).  Frizco first jumped on the back bumper and trunk of the vehicle, walked to the right and jumped on the back passenger door, continued around the front then jumped on the driver's side door before sniffing at the back underside of the vehicle then sitting. (Exhibit 1)

**Search**

Trooper Rauenhorst began his vehicle search in the trunk at 10:08.  (Exhibit 1).  Here he found the suspiciously "missing" luggage: a black backpack with men's clothing, red suitcase, a pair of men's shoes, duffle bag with toiletries, another small bag with toiletries and prescribed

6

medication, and a tote bag of shoes. (Exhibit 1) The search continued to the back seat, then the front seat, and then to a purse. (Exhibit 1) Trooper Rauenhorst seems to abandon his search for drugs and searches a small notebook in the purse, opens multiple paper receipts from the purse pockets, finds keys (likely the suspiciously "missing" house keys) then moves on to paper documents in the console. (Exhibit 1 10:16-10:20) At 10:20 he looks under the hood. At 10:21 a fellow officer notices the seats are high and have been modified. (Exhibit 1) The vehicle was towed and drugs were found in a compartment beneath the seats. (Exhibit 1)

## ARGUMENT

**The Extended Stop Was Impermissible**

The extension of the stop after the warning was issued was impermissible. A detention for a traffic stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Jones*, 269 F3d 919, 924 (8th Cir. 2001) Thus, once the officer finishes the task associated with the stop, the purpose of that stop is complete and further detention would be unreasonable unless something that occurred during the traffic stop generated the necessary "reasonable suspicion" to justify further detention. *United States v. Chaney*, 192 F. Supp.3d 992, 1006 (E.D. Moo 2016). Additionally, under *Rodriguez*, an officer may not prolong a traffic stop without reasonable suspicion of criminal activity. In this case, the warning was issued, the purpose of the stop had concluded, and the stop was prolonged to effectuate the dog sniff.

Generally, a traffic stop involves checking the status of a driver's license, checking registration for the vehicle, and making sure the vehicle is insured. In the process, an officer will likely engage in conversation with the driver. Officers may ask questions about the driver's destination, where they are traveling from, the purpose of the trip, and other topics. None of this would be considered inappropriate. During a traffic stop, an officer "may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks" including a check of the driver's criminal history. *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013).

In the instant case, the Defendants take no issue with the Trooper's ability to process a warning for a minor traffic violation and promptly have them on their way. That is not what happened. While a vehicle is stopped, officers may extend inquiries into matters unrelated to the

traffic stop, as long as doing so does not "measurably extend the duration of the stop. *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). Trooper Rauenhorst asked several questions about the particulars of the trip, and received basic responses. He failed to follow-up on his questions. The Trooper went about issuing the warning, which was completed. Nothing in the record suggests the Trooper had any other independent basis to continue the interaction.

### There Was Insufficient Reasonable Suspicion

Trooper Rauenhorst did not have sufficient reasonable suspicion of criminal activity to prolong the detention. Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Mosley*, 878 F.3d 246, 251 (8th Cir. 2017). The Court must "consider the totality of the circumstances when determining whether an officer has a particularized and objective basis to suspect wrongdoing." *United States v. Williams*, 796 F.3d 951, 957 (8th Cir. 2015). In the instant case, neither Ana nor Victor showed signs of nervousness and there is nothing in the reports to suggest they acted any differently than others in a typical traffic stop for a minor violation. Regardless of the Trooper's testimony, nervousness at being pulled over by law enforcement is a typical human reaction.

While Trooper Rauenhorst based much of his reasonable suspicion on responses to his questions, he specifically neglected to ask the obvious follow up questions to anything he found suspicious. This was either an interview tactic or a serious lack of curiosity. For example, if he has asked about the lack of luggage Ana and Victor have explained it was in the trunk. If he had asked how they were going to take dogs to the Mall of America, they may have explained they were staying with friends. Had he asked why the house keys were not with the car keys, they may have explained it was a borrowed car and the house keys were in the purse. Maybe if he had confronted them with the fact that Miguel was not the name listed on the title Ana would have provided information to clear up this discrepancy. If Trooper Rauenhorst had asked why the couple told him they were traveling to Minneapolis, Bloomington, and MOA they could have explained they were going to all three places. Why three phones, was one a work phone? Had he asked, he would know.

At this point, Ana and Victor are a couple from Oregon, traveling across the country with luggage in the trunk, keys in the purse, dogs in the back seat to visit Minneapolis and the Mall of America for three days. Ana was speeding and forgot to turn her blinker off when pulled over. Neither was evasive or uncooperative. There were no signs of impairment and nothing in plain view that appeared to be in anyway criminal evidence. Trooper Rauenhorst could not conclude solely from his interaction with Ana and Victor that a drug dog search was necessary.

## CONCLUSION

The extension of stop was impermissible, the dog sniff was not based upon reasonable suspicion and violated the Defendants' Fourth Amendment rights. Therefore, we ask the court to grant the Defendants' motions to suppress all evidence found in the vehicle and any evidence derived from the vehicle search.

SPEAS LAW FIRM, P.A.

Date: __March 29, 2023_____      By _s/ Jennifer E. Speas_____
                                    Jennifer E. Speas, #264817
                                    Flour Exchange Building
                                    310 Fourth Avenue South, Suite 1050
                                    Minneapolis, Minnesota 55415
                                    (612) 333-6160 / (612) 333-8003 fax
                                    Jennifer@speaslaw.com
                                    ATTORNEY FOR DEFENDANT


                                    BEITO & LENGELING

Dated: __March 29, 2023__           By___S./ Robert Lengeling_____
                                    Robert Lengeling
                                    Attorney ID No. 304165
                                    310 Fourth Avenue South, Suite 1050
                                    Minneapolis, Minnesota 55415
                                    Telephone: (612) 767-1618
                                    Rob@BeitoLengelinglaw.com
                                    ATTORNEY FOR DEFENDANT