UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-CR-252 (NEB/LIB) |
| Plaintiff, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| VICTOR MANUEL CALIXTRO-LOYA (1), and ANADELIA PACHECO-RIVERA (2), | |
| Defendants. | |

Defendants Victor Manuel Calixtro-Loya and Andaelia Pacheco-Rivera move to suppress evidence found after a K-9 search of the car Pacheco-Rivera was driving. In a Report and Recommendation, United States Magistrate Judge Leo I. Brisbois recommends denying the motions because he found that Pacheco-Rivera had consented to the K-9 search of the car.[1] (ECF No. 79 ("R&R") at 27.) Defendants jointly object to the

---

[1] Defendants agree with the R&R's finding that the state trooper did not have an independent reasonable, articulable suspicion of other criminal activity to extend the encounter beyond the traffic stop. (ECF No. 80 at 2.) The government did not file an objection to this finding, though in response to Defendants' objection it states in passing that it "disagrees" with this finding. (ECF No. 81 at 1 n.1.) The government also notes that the R&R did not address its argument that Calixtro-Loya lacks standing to contest the K-9 search, "reasserts this argument and asks the Court to deny Calixtro's [motion] on this basis as well." (*Id.*) The Court need not address this issue because it finds that the K-9 search was consensual.

R&R's finding that the K-9 search of the car was consensual. (ECF No. 80 ("Obj.").) After a *de novo* review, the Court overrules Defendants' objection and accepts the R&R.

## BACKGROUND

The R&R details the facts and procedural history of this case, (R&R at 2, 12–16), which are undisputed apart from the objection that the Court overrules below. The Court incorporates the R&R's summary and repeats the facts necessary for context.

On July 19, 2022, Minnesota State Trooper Douglas Rauenhorst was in his patrol vehicle traveling on I-94 when he observed a black Toyota Corolla traveling at 76 miles per hour in a 70 miles per hour zone. (R&R at 12[2].) He initiated a traffic stop and spoke with the driver, Pacheco-Rivera, and observed a passenger, Calixtro-Loya, in the car. (*Id.* at 12–13.) After some discussion and checking Pacheco-Rivera's driver's license and vehicle registration, Trooper Rauenhorst gave Pacheco-Rivera a warning citation.[3] (*Id.* at 13–14.)

Upon giving Pacheco-Rivera the warning, Trooper Rauenhorst asked, "Before you go, you don't have anything illegal in the car at all, . . . no drugs or anything like that?" (Gov't's Ex. 1[4] at 16:10–16.) Pacheco-Rivera responded, "No." (Hr'g Tr. at 28.) Trooper

---

[2] In citing the R&R, the Court incorporates the citations it contains.

[3] Trooper Rauenhorst acknowledged that the traffic stop was completed upon handing Pacheco-Rivera the warning citation. (ECF No. 68 ("Hr'g Tr.") at 46–47.)

[4] Government's Exhibit 1 is Trooper Rauenhorst's body camera video recording of the July 19, 2022 traffic stop.

2

Rauenhorst then asked, "Is it ok if I run my K-9 around the car real quick? My drug dog." (Gov't's Ex. 1 at 16:16–21.) Although not visible on the body camera video, Pacheco-Rivera appears to respond affirmatively to the request for consent, as Trooper Rauenhorst says, "Ok," and asks them to exit the vehicle. (*Id.* at 16:21–24.) Defendants step out of the car. (*Id.* at 16:24–50.) As Calixtro-Loya exited the car, Trooper Rauenhorst asked him to leave a knife from his pocket it in the vehicle, which Calixtro-Loya did. (*Id.* at 16:50–59.) Trooper Rauenhorst then retrieved his K-9 partner Frizko. (Hr'g Tr. at 30.) Frizko alerted to the presence of narcotics near the rear underside of the Corolla. (*Id.* at 31.)

At the hearing on the suppression motions, Trooper Rauenhorst testified that Pacheco-Rivera consented to the K-9 search. (*Id.* at 28–29, 47.)

## ANALYSIS

Under the Fourth Amendment, a warrantless search is valid if it is "conducted pursuant to the knowing and voluntary consent of the person subject to a search." *United States v. Gastelum*, 11 F.4th 898, 904 (8th Cir. 2021) (citation omitted). The government bears the burden of proving voluntary consent. *Id.* The "issue turns not on the defendant's subjective state of mind, but on whether the officer reasonably believed the defendant consented." *Id.* (citation omitted). The question is "whether it was reasonable for the officer to believe that the suspect gave him permission to search the requested item." *Id.* (citation omitted).

The voluntariness of consent is a "totality of the circumstances" inquiry, in which courts consider several factors:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [her] *Miranda* rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

*Id.* (citing *United States v. Carr*, 895 F.3d 1083, 1089 (8th Cir. 2018)).

Based on the totality of the circumstances, Trooper Rauenhorst reasonably believed that Pacheco-Rivera consented to the K-9 search. Defendants are adults, and no one suggests that they were under the influence of alcohol or drugs at the time of the stop. Trooper Rauenhorst asked in a cordial and relaxed manner about the K-9 search. He did not display his weapon, raise his voice, place restraints on Defendants, or promise them anything before receiving Pacheco-Rivera's consent. Defendants were seated in the car and not under arrest when Pacheco-Rivera consented to the K-9 search, and Trooper Rauenhorst did not ask Defendants to exit the Corolla until after Pacheco-Rivera consented. The stop and K-9 search took place on a busy interstate in daylight. And Defendants never "objected to the search," but rather "stood by silently" as it occurred. *Id.* at 905 (citation omitted). "Nothing about this encounter shows that [Pacheco-Rivera's]

4

will was so 'overborne and [her] capacity for self-determination so critically impaired' that '[her] consent to search must have been involuntary.'" *Id.* (citing *United States v. Johnson*, 956 F.3d 510, 516 (8th Cir. 2020)). Under the totality of these circumstances, a reasonable officer would have believed that Pacheco-Rivera's consent to the K-9 search was "the product of an essentially free and unconstrained choice that [she] was making." *Id.* (citation omitted).

Defendants make four arguments for why the R&R erred in finding consent. First, they argue that Trooper Rauenhorst's request to "'run my K-9 around the car quick?' is purposely vague and unclear." (Obj. at 2.) The Court disagrees. Defendants cite no authority supporting their position that officers must use particular language in asking for consent to search. Moreover, before requesting consent to conduct the K-9 search, Trooper Rauenhorst asked if they had anything illegal in the car, including drugs, and mentioned his "drug dog" when requesting consent, (Gov't's Ex. 1 at 16:21), undercutting their suggestion that his "lingo [was] designed to ensure cooperation and vaguely imply what he intended to do." (*See* Obj. at 2.) Defendants also press that Trooper Rauenhorst never said they were free to leave. "[A]n officer is not required to advise suspects of their right to refuse consent to a search." *Gastelum*, 11 F.4th at 905. And "while most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *United States v. Villa-Gonzalez*, 623 F.3d 526, 532 (8th Cir. 2010) (citing *I.N.S. v. Delgado*, 466

U.S. 210, 216 (1984)). Nothing in the record suggests that Trooper Rauenhorst prevented Defendants from leaving the scene.

Second, Defendants contend that they are Spanish speakers who "appear confused in the video as they interact." (Obj. at 3.) Defendants also assert that they do not "appear to be highly educated" and have a "blank look" on the video, and require interpreters in court. (*Id.* at 4.) Defendants offer no evidence that they did not understand Trooper Rauenhorst, either because of a language barrier or lack of intelligence. Trooper Rauenhorst testified that he believed both Defendants understood him speaking English because they responded to him. (Hr'g Tr. at 44, 59.) No evidence in the record suggests that Defendants "indicated an inability to understand what was happening or what the officers were saying/asking" at the scene. *United States v. Ibarra*, No. CR 06-40125, 2007 WL 1306639, at *8 (D.S.D. May 3, 2007) (noting the lack of authority indicating that "the use of an interpreter for later court proceedings mandates a finding that an earlier consent or waiver of rights without an interpreter was invalid"); *see United States v. Perez*, 200 F.3d 576, 579 (8th Cir. 2000) (finding no clear error where court concluded that defendant's "limited English proficiency did not interfere with his ability to give knowing and voluntary consent to the search of his vehicle"). After consenting to the K-9 search, Defendants exited the Corolla without asking any questions or raising any objections.

Third, Defendants maintain that they have little or no criminal history, and thus did not know that they could withhold consent. (Obj. at 4.) But a lack of experience with

6

law enforcement officials does not render consent involuntary. *United States v. Cobo-Cobo*, 873 F.3d 613, 616 (8th Cir. 2017). Having reviewed the totality of the circumstances, the Court finds that Pacheco-Rivera's consent to the K-9 search of the Corolla was voluntary. *See United States v. Zamoran-Coronel*, 231 F.3d 466, 470 (8th Cir. 2000) (rejecting defendant's argument that "poor English, the officers' failure to review the consent form in Spanish or to tell her she could refuse consent, along with her lack of familiarity with law enforcement, render[ed] the consent involuntary").

Finally, Defendants argue that because the traffic stop was completed, Trooper Rauenhorst illegally detained them when he asked for consent to search. (Obj. at 5.) "Once th[e] initial investigation is finished, . . . the purpose of the traffic stop is complete and further detention of the driver or vehicle would be unreasonable, 'unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention' *or unless the continued encounter is consensual*." *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010) (emphasis added, citation omitted). The Court has found that the K-9 search of the Corolla was consensual. Once Pacheco-Rivera gave consent, the traffic stop was no longer a seizure, "so the Fourth Amendment did not prohibit [Trooper Rauenhorst] from prolonging the stop[] to investigate other matters." *United States v. Gonzalez*, No. 15-CR-147 (DWF/FLN), 2016 WL 740252, at *2 (D. Minn. Feb. 24, 2016).

## CONCLUSION

Based on all the files, records, and proceedings in this case, IT IS HEREBY ORDERED THAT:

1. Defendants' Objection (ECF No. 80) is OVERRULED;

2. The Report and Recommendation (ECF No. 79) is ACCEPTED;

3. Calixtro-Loya's Motion to Suppress Evidence from Illegal Search and Seizure (ECF No. 33) is DENIED; and

4. Pacheco-Rivera's Motion to Suppress Evidence from Illegal Search and Seizure (ECF No. 46) is DENIED.

Dated: July 12, 2023                                              BY THE COURT:

                                                                  s/Nancy E. Brasel
                                                                  Nancy E. Brasel
                                                                  United States District Judge